**UNITED STATES of America,
Appellee,**

v.

**Jeffrey H. SMILOW, Appellant.**

**No. 639, Docket 72–1738.**

United States Court of Appeals,
Second Circuit.

Submitted Jan. 17, 1973.

Decided Jan. 30, 1973.

---

Bertram Zweibon, Barry Ivan Slotnick, New York City, Martin Elefant, Brooklyn, N. Y., for appellant.

Whitney North Seymour, U. S. Atty., for Southern District of New York, Henry Putzel, III, and Joseph Jaffee, Asst. U. S. Attys., for appellee.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

On July 20, 1972, this court affirmed the decision of the United States District Court for the Southern District of New York, Edward Weinfeld, J., adjudging Jeffrey H. Smilow guilty of contempt of court for refusal to answer questions before a grand jury relating to the firebombing of the Manhattan offices of Columbia Artists Management, Inc. and Hurok Concerts, Inc. Smilow v. United States, 465 F.2d 802 (2d Cir. 1972). One of the grounds invoked by Smilow for his silence was an assertion that the grand jury questions had been derived from information acquired through illegal electronic surveillance of a telephone at the office of the Jewish Defense League (JDL). In both the district court and this court, the Assistant United States Attorney in charge of this case represented, based upon a search of the records by the F.B.I., that the Government had not conducted any electronic surveillance of Smilow's telephone conversations. Based upon these assurances, Judge Weinfeld rejected Smilow's fourth amendment defense, and we affirmed the judgment.[1]

Smilow petitioned the Supreme Court for certiorari, and shortly thereafter, in a memorandum filed with the Court, the Government admitted for the first time "that there is a possibility that petitioner was overheard in the course of an electronic surveillance conducted with the approval of the Attorney General in the interests of national security." Because of this revelation, the Supreme Court granted certiorari, summarily vacated the judgment and remanded to this court "for further consideration in light of the position presently asserted by the Government." 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972).

Because of the necessity of determining whether Smilow's conversations were the subject of government wiretapping, whether such surveillance was illegal, see United States v. Schwartz, 71–Cr–977 (E.D.N.Y. Sept. 26,

---

[1]. Smilow also contended that his religious beliefs forbade his acting as an informer and that his right to a fair trial on state charges growing out of the same firebombing incidents would be jeopardized if he answered the questions. Both of these claims were rejected by Judge Weinfeld and by us. In addition, Smilow unsuccessfully argued to this court that he could refuse to answer questions unless the Government denied having employed any wiretapping against the JDL office, regardless of whether his particular conversations had been monitored.

1972), and whether the questions posed to Smilow before the grand jury were the fruits of this alleged illegal government activity, both parties agree that we must remand this case to the district court for such hearings as may be necessary to enable it to make these determinations. See Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

▆ In view of the history of this case, we cannot forbear expressing our regret that those representing the Government in court were unable, until such a late date, to discover the true state of affairs with regard to official wiretapping of Smilow's telephone conversations. We are told in explanation that, until Smilow filed his certiorari petition, he had not specified the dates on which he had had conversations that might have been overheard by the now-conceded wiretap of the JDL office nor had he mentioned that he might have introduced himself as Jeff during these conversations. We fail to see, however, why either of these details was necessary to a determination of whether Smilow might have been overheard. The Government knew during which periods it had maintained surveillance of the office in question, and examination of the resulting transcripts would have shown whether Smilow's allegations might be true. As for the "nickname," it does not require much imagination to anticipate that an individual named Jeffrey might be known as Jeff to friends or acquaintances. If government agencies are going to employ such surveillance techniques, responsibility for accurate description to the courts of the results of these efforts rests with those who make the report. See 18 U.S.C. § 3504. Although in this case a second check of the records elicited a concession of possible error, the litigants, their counsel, and the courts wasted a considerable amount of time working under great pressure because of the original misin-

formation. In addition, Smilow was in jail for a good portion of that period. We trust that in the future the Government will be more thorough in the investigation of such matters.

Case remanded for further appropriate proceedings.