In re Lionel MINTZER, Appellant.

No. 74–1388.

United States Court of Appeals,
First Circuit.

Argued Dec. 4, 1974.

Decided Dec. 26, 1974.

Henry D. Katz, Boston, Mass., with whom Joseph J. Balliro, Boston, Mass., was on brief, for appellant.

George F. Kelly, Sp. Atty., Dept. of Justice, with whom James N. Gabriel, U. S. Atty., Gerald E. McDowell, and Jeffrey M. Johnson, Sp. Attys., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

PER CURIAM.

The appellant was called as a witness before a grand jury. Although granted immunity for his testimony, he was recalcitrant when he appeared and was as a consequence held in contempt pursuant to 28 U.S.C. § 1826(a).

■ The district court had, in an effort to expedite matters, permitted the witness to seek government affirmance or denial of wiretapping, under 18 U.S.C. § 3504, prior to his grand jury appearance. This was not required, because appellant was not yet an "aggrieved person" as defined by the statute. Gelbard v. United States, 408 U.S. 41, 54, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); see In re Lochiatto, 497 F.2d 803, 806 (1st Cir. 1974). But the district judge reasoned that time would be saved by extending the privilege before the witness was brought before the grand jury. The government was, then, asked to affirm or deny the existence of wiretaps at the hearing where the witness was granted immunity (October 10, 1974).

■ In response to the court's request of October 10 that the government affirm or deny the existence of taps, the United States Attorney submitted an affidavit on October 16 in which he swore that he knew of no electronic surveillance by which the plaintiff was aggrieved other than those conducted pursuant to E.B.D. 71–98 and E.B.D. 71–168. Ap-

pellant, however, refused to answer when called before the grand jury on October 23, and the government moved for an order of contempt on October 25. Appellant subsequently challenged the government's disclosure as inadequate; the government then searched its files and discovered a *subsequent* wiretap, E.B.D. 71–203, revealing it at the contempt hearing on November 12. The materials, authorizations and affidavits of need along with a time-length affidavit, required by *Lochiatto*, 497 F.2d at 808, pertaining to *all* wiretaps so revealed were made available or were already in the hands of appellant's counsel prior to the witness' grand jury appearance.[1] In addition, the government attorney affirmed under oath that all questions to be asked were derived exclusively from E.B.D. 71–98.

■ Defendant asserts that the requirement to "affirm or deny" incorporates a requirement to search central federal records and all state records.[2] Further, that once the wiretaps have been revealed, the grand jury witness must be given an opportunity to develop a case that some of the taps (presumably those shown to be illegal under *Lochiatto*) are "arguably relevant" to the questions posed. These arguments are premised on the language of 18 U.S.C. § 3504(a)(1):

"upon a claim of a party aggrieved that evidence is inadmissible because it is the *primary product of an unlawful act or because it was obtained by ex-*

1. E.B.D. 71–98 was previously found to be a legal wiretap and E.B.D. 71–203 was previously admitted to have been authorized by Will Wilson, *compare* In re Marcus, 491 F.2d 901 (1st Cir. 1974) *with* United States v. Giordano, 416 U.S. 505, 520, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), facts both the district court and appellant's counsel were apprised of prior to the contempt hearing. The government offered the contents of the 71–98 tap for court examination in support of its affidavit that all questions and information were derived therefrom. Moreover, appellant's attorney had been in possession of the documents supporting all three taps (E.B.D.s 71–98, 71–168, and 71–203) for a substantial time prior to the contempt hearing of November 12. Under all these circumstances, appellant's contention that he was denied a reason-

able time for preparation of his defense, Fed. R.Crim.Proc. 42(b), recognized as applicable to such proceedings by United States v. Alter, 482 F.2d 1016, 1020–1024 (9th Cir. 1973), is without merit.

2. While we think this, at least as to federal authorities, is a salutary practice, and may be mandated in other contexts, see Gelbard v. United States, 408 U.S. 41, 56, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), we also think that at this proceeding all that can be required is that those conducting the grand jury proceeding affirm that they have no knowledge of and have not in any way employed other taps in formulating lines of inquiry or questions to be posed to the witness. See discussion *infra.*

*ploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act".* [Emphasis supplied.]

and 18 U.S.C. § 2518(10)(a):

"any aggrieved person . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom . . . ."

■ We think that *in a grand jury proceeding*, the policies articulated in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), foreclose the broad inquiry argued by appellant. Logical development of the Supreme Courts concern for expeditious grand jury proceedings precludes minitrials on each witness' rights; witnesses cannot be entitled to unlimited evidentiary exploration. In *Lochiatto* we indicated that the resolution of the legality of the wiretap was for the judge but that (unlike the trial situation) investigation of the legality for these purposes and in this type of proceeding would be confined to facial violations or error in the authorizations or legal invalidity that appears from a limited exploration. *Lochiatto,* 497 F.2d at 808. Appellant argues that we should interpret "primary product" or "evidence . . . obtained by exploitation", § 3504(a)(1), or "contents of an intercepted wiretap", § 2518(10)(a), to require a judicial determination of "arguable relevancy" of the content of taps, other than the ones the United States Attorney avers were used, to questions formulated. A similar inquiry, appellant argues, was mandated in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ But *Alderman* was a post-conviction case exploring the Fourth Amendment question of what must be excluded from *trial* evidence. The exclusionary rule has since been restricted to the trial context in *Calandra, supra,* and we think we must lean heavily on the latter case in acknowledging that greater rights exist for criminal defendants than for grand jury witnesses. The witness' rights here depend exclusively on the statute. We think it inconsistent with *Lochiatto* to permit the kind of exploration requested here.

While relevance is normally a judicial question, we think a grand jury witness is adequately protected where the government affirms the existence of wiretaps and gives access to the materials as required in *Lochiatto,* if the government also swears by affidavit that it did not have or use any other wiretaps or any of the taps the court determines to be illegal in the formulation of the questions to the witness. *See* In re Grand Jury Investigation (Testa), 486 F.2d 1013, 1016–1017 (3d Cir. 1973). The sworn statement on penalty of perjury which, should the witness become a defendant, would be followed by broad discovery of government materials gives the witness as much protection as can be reconciled with expeditious handling of the grand jury. This is not the proper forum for declarations on the validity of wiretaps which are not directly related to the proceeding.[3]

■ Appellant argues briefly on appeal that the affidavit supporting E.B.D. 71–98 was in part based on evidence obtained from a prior tap on another's telephone. In the district court, however, although one paragraph of a 23 paragraph motion for discovery related to the same tap, the claim argued to the court was that since E.B.D. 71–98 was the result of a "cumulative investigation", appellant was entitled to discovery of all taps relating to that investigation from 1968 to 1974. Such a blanket inquiry we deem foreclosed by *Calandra, supra.* As to whether or not a "mother tap" appears sufficiently relevant as to require its discovery in proceedings relating to a subsequent tap, we imply no opinion, agreeing with the government that the issue was not raised with sufficient specificity before the district court.

---

3. The Act provides another forum for challenging taps and recovery of damages if the Act is violated, 18 U.S.C. § 2520.

The appellant received all the information he was entitled to at the time. His citation for contempt is affirmed.

Affirmed.